Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000528
08-NOV-2019
08:00 AM

NO. CAAP-18-0000528

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
AUSTIN H. ROSA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 5CPC-17-0000190)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Chan, JJ.)

Defendant-Appellant Austin H. Rosa (**Rosa**) appeals from the Judgment of Conviction and Sentence (**Judgment**) entered against him and in favor of Plaintiff-Appellee State of Hawai'i (**State**) on May 29, 2018, in the Circuit Court of the Fifth Circuit (**Circuit Court**).[1] On February 8, 2018, Rosa pleaded guilty in 5CPC-17-0000190 to one count of Violation of a Temporary Restraining Order (**TRO**), in violation of Hawaii Revised

---

[1] The Honorable Randal G. B. Valenciano presided.

Statutes (**HRS**) § 586-4 (2018).[2]  Rosa was sentenced to a one-year

term of imprisonment.

Rosa raises two points of error on appeal, contending

that:  (1) the classification of all forms of TRO violations as

misdemeanors is unconstitutional; and (2) the Circuit Court

abused its discretion in imposing the maximum term of

imprisonment.

Upon careful review of the record and the briefs

submitted by the parties, and having given due consideration to

the arguments advanced and the issues raised by the parties, we

resolve Rosa's contentions as follows:

(1)   HRS § 586-4(e) provides, *inter alia*, that a

knowing or intentional violation of a TRO is a misdemeanor.  See

also HRS § 586-11(a) (2018).  Rosa contends that HRS § 586-4

---

[2]      HRS § 586-4 provides, in relevant part:

> **§ 586-4  Temporary restraining order.**  (a)  Upon
> petition to a family court judge, an ex parte temporary
> restraining order may be granted without notice to restrain
> either or both parties from contacting, threatening, or
> physically abusing each other, notwithstanding that a
> complaint for annulment, divorce, or separation has not been
> filed.  The order may be granted to any person who, at the
> time the order is granted, is a family or household member
> as defined in section 586-1 or who filed a petition on
> behalf of a family or household member.  The order shall
> enjoin the respondent or person to be restrained from
> performing any combination of the following acts:
>> (1)   Contacting, threatening, or physically abusing
>> the protected party;
>> (2)   Contacting, threatening, or physically abusing
>> any person residing at the protected party's
>> residence; or
>> (3)   Entering or visiting the protected party's
>> residence.
>
>      . . . .
>
>      (e)   When a temporary restraining order is granted and
> the respondent or person to be restrained knows of the
> order, a knowing or intentional violation of the restraining
> order is a misdemeanor[.]

violates the eighth amendment of the United States Constitution, as well as article 1, section 12 of the Hawaiʻi Constitution, because it disproportionately punishes "less severe" forms of TRO violations, which amounts to cruel and unusual punishment. More specifically, Rosa argues that a violation consisting of "simply making contact with a protected person" is "arguably benign behavior" when compared to physical abuse or threatening behavior.

The Hawaiʻi Supreme Court has held that "[t]he question of what constitutes an adequate penalty necessary for the prevention of crime is addressed to the sound judgment of the legislature and the courts will not interfere with its exercise, unless the punishment prescribed appears clearly and manifestly to be cruel and unusual." State v. Freitas, 61 Haw. 262, 267, 602 P.2d 914, 919 (1979), overruled on other grounds by State v. Auld, 136 Hawaiʻi 244, 361 P.3d 471 (2015).

> "[P]rominence is given to the power of the legislature to define crimes and their punishment. We concede the power in most of its exercises. We disclaim the right to assert a judgment against that of the legislature, of the expediency of the laws, or the right to oppose the judicial power to the legislative power to define crimes and fix their punishment, unless that power encounters in its exercise a constitutional prohibition. . . . The function of the legislature is primary, its exercise fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of its wisdom or propriety."

Id. at 267, 602 P.2d at 919-20 (citation omitted).

The supreme court has repeatedly stated:

> The standard by which punishment is to be judged under the "cruel and unusual" punishment provisions of both the United States and Hawaii Constitutions is whether, in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community.

State v. Solomon, 107 Hawai'i 117, 131, 111 P.3d 12, 26 (2005) (citations, internal quotation marks, and brackets omitted). In Solomon, the supreme court set forth a three-part test to determine whether a punishment was "clearly and manifestly" cruel and unusual:

> (1) the nature of the offense and/or the offender, with particular regard to the degree of danger posed by both to society; (2) the extent of the challenged penalty as compared to the punishments prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the challenged penalty as compared to the punishment prescribed for the same offense in other jurisdictions.

Id. at 132, 111 P.3d at 27 (citation omitted). "In using this test, the nature of the offense and the danger the offender poses to society are the key factors in this determination." Id. (citation and internal quotation marks omitted).

Here, Rosa submits that multiple offenses involving various forms of physical violence and threatening behavior are classified as petty misdemeanors, pointing, as examples, to Assault in the third degree, when committed in a fight or scuffle entered into by mutual consent (HRS § 707-712 (2014)), and Harassment (HRS § 711-1106 (2014)). On this basis, Rosa argues that classifying nonviolent or nonthreatening TRO violations as misdemeanors is unconstitutional. We conclude that Rosa's argument is without merit.

As this court has previously explained:

> The legislature enacted HRS Chapter 586 in 1982 "to streamline the procedures for obtaining and issuing ex parte temporary restraining orders to prevent acts of or the recurrence of domestic abuse." Hse. Conf. Comm. Rep. No. 1, in 1982 House Journal, at 815; see also Hse. Stand. Comm. Rep. No. 592, in 1982 House Journal, at 1165; Sen. Conf. Comm. Rep. No. 4, in 1982 Senate Journal, at 873. The Senate Standing Committee Report found that a restraining order serves "to cool violent relationships that have been developing for a number of years" and that giving the court "the discretion to extend protective orders" provides

> "greater flexibility in trying to calm the emotionally charged nature of such situations." Sen. Stand. Comm. Rep. No. 643, in 1982 Senate Journal, at 1222. Thus, the purpose of the restraining order is to "prevent [ ] acts of abuse, or a recurrence of actual domestic abuse, and assur[e] a period of separation of the parties involved." HRS § 586-4.
>
> Later amendments to Chapter 586 sought "to better protect the victims of domestic abuse." Sen. Stand Comm. Rep. No. 1444, in 1987 Senate Journal, at 1521. The legislature recognized "that many victims of domestic abuse depend on protective orders to rescue them from violent attacks and threats of abuse." Hse. Stand. Comm. Rep. No. 549, in 1987 House Journal, at 1359.

Coyle v. Compton, 85 Hawai'i 197, 205, 940 P.2d 404, 412 (App. 1997).

Subsequently, in Act 186 of 2000, the Legislature stated: "Domestic violence is a pervasive problem in Hawaii that impacts not only victims, but family, friends, and others." 2000 Haw. Sess. Laws Act 186, § 1 at 380. In 2008, in conjunction with the additional statutory protections,[3] a Hawai'i Senate report noted:

> According to the National Institute of Justice and the Centers for Disease Control and Prevention, one in four women in the United States will experience domestic violence during her lifetime. In 2007, eighty-six per cent of the legal assistance provided in Hawaii was for victims of domestic violence. Many victims of domestic violence obtain a temporary restraining order or protective order against the batterer.

S. Stand. Comm. Rep. No. 2693, in 2008 Senate Journal, at 1154.

In explaining certain increases to the mandatory minimum jail time for TRO violations, a 2011 Hawai'i Senate report stated:

> The intent of your Committee is to enhance the protection of victims of domestic violence by increasing penalties for persons who violate temporary restraining orders by sending a clear warning to these individuals that

---

[3] The electronic monitoring provisions in Act 180 of 2008 sunsetted on July 1, 2010. 2008 Haw. Sess. Laws Act 180, § 6 at 675.

any violation of a temporary restraining order will not be tolerated with leniency.

S. Stand. Comm. Rep. No. 844, in 2011 Senate Journal, at 1142.[4]

Finally, as this court has previously observed, "the plain and obvious purpose of the HRS § 586-4(d) misdemeanor is to prevent violations of the TRO." State v. Wise, 107 Hawaiʻi 67, 71, 109 P.3d 708, 712 (App. 2005).

The Hawaiʻi Legislature and the Hawaiʻi courts have repeatedly recognized the serious danger posed to individual victims and society by domestic abuse and the importance of remedies to prevent the recurrence and escalation of the abuse. The Legislature's determination that treatment of all knowing or intentional HRS § 586-4 TRO violations as misdemeanors, including violations of the no-contact prohibition, is not disproportionate to the proscribed conduct. A one-year term of imprisonment for a violation of a TRO is not "of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community." See Solomon, 107 Hawaiʻi at 131, 111 P.3d at 26. We conclude that the classification of knowing or intentional nonviolent or nonthreatening TRO violations as misdemeanors is constitutional, and we reject Rosa's first point of error.

(2) Rosa argues that, even if HRS § 586-4 is not unconstitutional, the Circuit Court plainly abused its discretion when it sentenced him to a one-year term of imprisonment, based on the State's recommended sentence of "time served," the

---

[4] Act 206 of 2012 was originally introduced during the Regular Session of 2011 as H.B. 238. 2011 House Journal, at 42. H.B. 238 was carried over and adopted in the Regular Session of 2012. 2012 House Journal, at 738.

victim's written statement, and various aspects of the Presentence Report. Rosa has not made the transcript available for the sentencing hearing in this case. Thus, this court is unable to review what was stated on the record before the Circuit Court imposed the sentence, as well as the specific reasoning stated by the court in imposing the sentence. Upon careful review of the record before us, and considering the mandate of HRS § 706-606 (2014), we cannot conclude that the Circuit Court abused its discretion in sentencing Rosa to imprisonment.

For these reasons, the Circuit Court's May 29, 2018 Judgment is affirmed.

DATED: Honolulu, Hawai'i, November 8, 2019.

On the briefs:

Rosa Flores,
for Defendant-Appellant.

Tracy Murakami,
Deputy Prosecuting Attorney,
County of Kauai,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge